## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Rakin Subhan ("Subhan"), Moin Mahbub ("Mahbub"), David Kay ("Kay"), Ashley Cleator ("Cleator"), and James Hicks ("Hicks") (hereinafter, the "Named Plaintiffs"), and Harris Roth ("Roth" or "Opt-In Plaintiff") (Named and Opt-In Plaintiffs together, "Plaintiffs"), on behalf of themselves and a class and collective of individuals allegedly similarly-situated that they seek to represent, and Simon Auerbacher ("Auerbacher"), Ram Destinations Miami LLC ("Ram Destinations") and Ram Caterers of Old Westbury, LLC ("Ram Caterers") (collectively hereinafter "Defendants") ("Plaintiffs" and "Defendants" are hereinafter referred to as the "Parties").

## 1.      RECITALS AND BACKGROUND

WHEREAS, on November 13, 2020, the Named Plaintiffs filed a Collective and Class Action Complaint against Defendants in the United States District Court for the Eastern District of New York asserting various claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for Defendants' alleged failure to pay them the minimum wage, overtime, tips, spread of hours pay, and to provide certain wage notices and wage statements to them and all other employees who are allegedly similarly-situated bearing index no. 20-cv-5541 (the "Litigation");

WHEREAS, on December 7, 2020, Plaintiffs filed an amended complaint that added a claim that Defendants improperly pooled tips of the Plaintiffs;

WHEREAS, Roth filed a Consent to become a Party Plaintiff and Join Lawsuit Form, joining the Litigation as an opt-in plaintiff on May 17, 2021;

WHEREAS, on July 23, 2021, Plaintiffs filed a motion seeking leave to file a second amended complaint adding Debra Auerbacher and Ram & MD Hospitality as parties;

WHEREAS, on October 20, 2021, Plaintiffs requested to withdraw their motion for leave to file a second amended complaint, which was approved by Order of the Court on October 27, 2021;

WHEREAS, in litigating the Plaintiffs' claims, the Parties engaged in substantial discovery, including reviewing hundreds of payroll documents exchanged by the Parties, analyzing personnel documents, wage notices and business records;

WHEREAS, Defendants deny all the allegations made by the Plaintiffs relating to their claims in the Litigation and deny any and all liability and damages to Plaintiffs and the class and collective they seek to represent, with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, on November 15, 2021, the Parties attended a full day mediation with Martin Scheinman, Esq. during which the Parties agreed to a settlement in principle of Plaintiffs' (including those of the putative class and collective) claims;

{01120563.DOCX.4}

WHEREAS, without admitting or conceding any liability or damages whatsoever and without admitting that wages, gratuities, and/or other amounts improperly were withheld from any of their employees, Defendants have agreed to resolve the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability, Defendants have agreed, for settlement purposes only, to class certification;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on the Plaintiffs and the Class Members, and based upon Class Counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that, if not settled now, litigation might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Class;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims between the Plaintiffs, the Class Members, and Defendants; and,

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1    Agreement.**  "Agreement" means this Settlement Agreement and Release.

**1.2    Alternative Minimum Benefit.** "Alternative Minimum Benefit" means the minimum settlement amount of Thirty Dollars and Zero Cents ($30.00) for Class Members whose settlement allocation pursuant to 3.4(B) below falls below Thirty Dollars and Zero Cents ($30.00). This Alternative Minimum Benefit is considered to be 100% liquidated damages and is not subject to tax withholdings

**1.3    Claim Form.** "Claim Form" shall mean the Court approved form provided to Class Members that they must submit, along with an IRS Form W-4 and W-9 ("IRS Forms"), in order to obtain their Individual Settlement Amount pursuant to this Agreement. The Claim Form will include the IRS Forms and shall be in the form attached as Exhibit B to this Agreement, or in such other form as approved by the Court.

**1.4    Claim Form Deadline.** "Claim Form Deadline" shall mean the date that is sixty (60) calendar days after the Settlement Claims Administrator mails the Notice, Claim Form, and IRS Forms to Class Members pursuant to Section 2.8 of this Agreement. If the Claims Administrator re-mails the Claim Form to any individual pursuant to Section 2.8 of this Agreement because the first mailing was returned as undeliverable or because an individual has requested a reissued Claim Form, the Claim Form Deadline for such individuals shall be the earlier of (a) sixty (60) days after the re-mailing, or (b) 90 days after the Claims Administrator's initial mailing to all Class Members. If the Claim Form Deadline falls on a Sunday or national bank holiday, the Claim Form Deadline will be the next business day that is not a Sunday or national bank holiday.

**1.5    Claimant.** "Claimant" shall mean any Class Member who submits a fully-executed Claim Form and completed IRS Forms by the Claim Form Deadline in accordance with Sections 1.4 and 2.8 of this Agreement.

**1.6    Claims Administrator or Settlement Claims Administrator.** The "Claims Administrator" or "Settlement Claims Administrator" will be mutually selected by the Parties, subject to approval by the Court, to mail the Notices, Claim Forms, IRS Forms, and administer the calculation, allocation, and distribution of the QSF, as defined herein. The Settlement Claims Administrator's fees shall be borne by the QSF. The Parties have preliminarily identified Arden Claims Service as the Settlement Claims Administrator.

**1.7    Class Action Complaint.** "Class Action Complaint" shall refer to the Amended Complaint.

**1.8    Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" shall mean Marcus Monteiro, Esq. of Monteiro & Fishman LLP.

**1.9    Class Members.** "Class Members" shall be defined as Plaintiffs and all other individuals employed by Defendants in tip eligible positions, as defined in Paragraph 1.34, at 21 Old Westbury Road, Old Westbury, NY 11568 and/or the Trump National Doral Miami during the Relevant Statutory Period.

**1.10    Court.** "Court" means the United States District Court for the Eastern District of New York.

**1.11    Days.** "Days" means calendar days unless otherwise stated.

**1.12    Defendants.** "Defendants" shall mean Simon Auerbacher, Ram Destinations Miami, LLC and Ram Caterers LLC, collectively.

**1.13    Defendants' Counsel.** "Defendants' Counsel" shall mean Ilan Weiser, Lois Traub, and Joseph Tangredi of Ellenoff, Grossman & Schole LLP.

**1.14    Effective Date.** "Effective Date" of the Settlement Agreement will be either: (a) the date thirty-five (35) days after the entry of the Final Approval Order, if there are no appeals; or

(b) if there is an appeal of the Final Approval Order, the day after all appeals are finally resolved in favor of complete and final approval of the Agreement.

**1.15**     **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Parties' motion seeking a Final Approval Order.

**1.16**     **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, dismissing the Litigation with prejudice, and entering a judgment consistent with the Parties' settlement terms.

**1.17**     **Individual Settlement Amount.** "Individual Settlement Amount" shall mean each Class Member's potential share of the Net Settlement Fund, as calculated pursuant to Section 3.4 of this Agreement.

**1.18**     **Letter.** "Letter" refers to the cover-letter that will be mailed to Class Members which includes the Notice, Claim Form and IRS Forms as enclosures. Subject to Court approval, the form of the letter will be the proposed template attached hereto as the first page of "Exhibit A."

**1.19**     **Litigation.** "Litigation" means the above-captioned case.

**1.20**     **Named Plaintiffs.** "Named Plaintiffs" means Rakin Subhan, Moin Mahbub, David Kay, Ashley Cleator and James Hicks.

**1.21**     **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Qualified Settlement Fund (as defined below in Section 1.29) after deductions for: (1) the Settlement Claims Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; and (3) Court-approved Service Awards to the Plaintiffs.

**1.22**     **Notice or Notices.** "Notice" or "Class Notice" means the Court approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit. Subject to Court approval, the form of the Notice will be the proposed template attached hereto as "Exhibit A."

**1.23**     **Objector.** "Objector" means a Class Member who files an objection to this Agreement and does not include any Class Member who opts-out of this Agreement.

**1.24**     **Opt-In Plaintiff.** "Opt-In Plaintiff" means Harris Roth.

**1.25**     **Opt-out Statement.** "Opt-out Statement" is a written statement signed by an individual Class Member who has decided to timely opt-out and not be included in this Agreement.

**1.26**     **Participating Class Members.** "Participating Class Members" are all Class Members who do not submit a valid and timely Opt-Out Statement.

**1.27**     **Plaintiffs.** "Plaintiffs" shall mean the Named Plaintiffs and Opt-In Plaintiff.

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

**1.28** **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement and directing the manner and timing of providing Notices to the Class Members.

**1.29** **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator into which Ram Caterers shall pay the maximum settlement amount as per Section 3.1. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Preliminary Approval Order and Final Approval Order. Interest, if any, earned on the QSF will become part of the Net Settlement Fund.

**1.30** **Released Claims.** "Released Claims" means any claims released by Class Members and/or Plaintiffs pursuant to Section 4 of this Agreement.

**1.31** **Relevant Statutory Period.** The "Relevant Statutory Period" refers to the period from November 14, 2014 to the date of the Preliminary Approval Order.

**1.32** **Settlement Checks.** "Settlement Checks" means the set of checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.33** **Settlement Common Fund.** "Settlement Common Fund" means One Million Three Hundred Twenty-Five Thousand Dollars and Zero Cents ($1,325,000.00) which is the maximum amount Ram Caterers will pay to settle the Litigation as set forth in this Agreement. The employers' share of applicable taxes shall be borne by Ram Caterers and not deducted from the Settlement Common Fund.

**1.34** **Tip Eligible Positions.** "Tip Eligible Positions" means bar staff, captains who provide direct food service to customers, coat check attendants, hosts, and wait staff.

**1.35** **Unredeemed Funds.** "Unredeemed Funds" means any money still remaining in the Net Settlement Fund on the later of one hundred eighty-one (181) days after the Settlement Checks are issued or fifty (50) days after the last reissued settlement check is issued.

**2.** **INITIAL PROCEDURAL ISSUES**

**2.1** **Binding Agreement.** This Agreement is a legally binding agreement and contains all material agreed-upon terms for the parties to seek a full and final settlement of the Litigation.

**2.2** **Interim Stay of Proceedings.** Pending the Fairness Hearing to be conducted by the Court, or earlier if for any reason the settlement contemplated by this Agreement will not occur, the Parties agree to hold in abeyance all proceedings in the Litigation, except such proceedings as are necessary to implement and complete the settlement, or to comply with any order of the Court.

**2.3** **Certification of Class for Settlement Purposes Only.** For Settlement Purposes only, the Parties hereby agree, subject to the approval of the Court, that the Class shall be deemed, for purposes of settlement only, to satisfy the requirements for class certification pursuant

DocuSign Envelope ID: AB3343C9-698C-4809-8E0E-D280C7AC253D

to Federal Rule of Civil Procedure 23(b)(3),and shall be certified as a class for settlement purposes only. Any class certification order entered in this action upon Preliminary Approval pursuant to the Settlement, this Agreement, or otherwise shall not constitute a waiver or admission, in this or in any other proceeding, by the Defendants of a finding or evidence that Named Plaintiffs' claims, Plaintiffs' claims, claims of any Opt-in Plaintiff, Class Member, or any Released Claims are appropriate for class treatment or that any requirement for class certification is otherwise satisfied in this matter. In the event that the Settlement or this Agreement does not become effective, either because the Effective Date does not occur for any other reason whatsoever or because the Agreement is later determined or declared to be null and void, in part or in full, the Court's Preliminary Approval Order certifying the Settlement Class for settlement purposes shall be null and void and shall no longer be in effect. By entering into the Settlement and this Agreement, Defendants in no way waive their respective rights to challenge Plaintiff's allegations that a class may be certified in this Action.

## 2.4    Preliminary Approval Motion.

(A)    Within ten (10) days after the Plaintiffs' and Defendants' execution of this Agreement, Class Counsel will file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion") with the Court. The Preliminary Approval Motion will seek an Order: (a) approving the Notice and Claim Form; (b) scheduling a fairness hearing; (c) directing the mailing of the Notice, Claim Form and IRS Forms, and providing the Class Members an opportunity to object to our request to "opt-out" from the settlement; (d) preliminarily approving the Agreement, subject only to the objections of Class Members and Final Approval by the Court; (e) preliminarily approving costs of administration; and (f) appointing a Settlement Administrator. The Preliminary Approval Motion will also seek deadlines for individuals to opt-out of this Agreement or provide objections to this Agreement, which deadline will be the date sixty (60) days from the mailing of the Notice, Claim Form and IRS Forms to the Class Members, and for a Fairness Hearing for Final Approval of the Agreement before the Court at the earliest practicable date of the Court's choosing but no earlier than forty-five (45) days after the Claim Form Deadline. Defendants will not oppose the Preliminary Approval Motion provided it is consistent with the terms of this Agreement.

(B)    If the Court denies the Preliminary Approval Motion, the Litigation will continue as if no settlement had been attempted, unless the Parties jointly agree to seek reconsideration of the ruling, Plaintiffs or Defendants appeal the ruling, or if the Parties seek Court approval of a renegotiated Agreement.

(C)    The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal. Any disputes which arise between the Parties related to the Parties' efforts to obtain a Preliminary Approval Order, Final Approval Order, and dismissal with prejudice shall be submitted to mediator Martin Scheinman, Esq. for further guidance.

{01120563.DOCX.4}

**2.5**     **Class Action Fairness Act ("CAFA") Notice.** Defendants shall be responsible for ensuring that this Agreement complies with CAFA and that the appropriate CAFA notices are issued.

**2.6**     **Retention and Responsibilities of the Settlement Claims Administrator.**

(A)     Within five (5) days after the filing of a Preliminary Approval Motion, the Parties shall engage a Settlement Claims Administrator whose fee shall be paid from the Qualified Settlement Fund.

(B)     The Settlement Claims Administrator will be responsible for:

    (1)     Opening and maintaining an FDIC insured account to deposit the payments set forth in Section 3 of this Agreement;

    (2)     preparing, printing and disseminating to Class Members the Class Notice, Claim Form, and IRS Forms and any other notices required by the Court;

    (3)     copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Class Member;

    (4)     receiving, reviewing, and responding to any Opt-Out Statements, Objections, or any other inquiries submitted by Class Members;

    (5)     furnishing to counsel for the Parties copies of any Opt-Out Statements, Objections, or other written or electronic communications from Class Members which the Claims Administrator receives;

    (6)     keeping track Opt-Out Statements, including maintaining the original mailing envelope in which the request was mailed;

    (7)     keeping track of returned Notices;

    (8)     keeping track of returned Claim Forms and IRS Forms;

    (9)     ascertaining current address information for each Notice, Claim Form, and IRS Forms returned as undeliverable and re-mailing of Notices, Claim Forms, and IRS Forms in accordance with Section 2.8(C) of this Agreement within five (5) days of receipt;

    (10)     calculating distribution amounts to Class Members in accordance with this Agreement;

    (11)     preparing and mailing the Settlement Checks and the related tax reporting forms to Plaintiff, Class Members, Class Counsel, and any other party, entity, or individual for whom receipt of such documents is necessary or required;

(12)   calculating any employer-side payroll taxes required pursuant to the settlement and providing such information to Defendants' Counsel so that all payments required by Defendants pursuant to the terms of this Agreement can be made in a timely manner;

(13)   timely responding to inquiries from Class Members, Class Counsel, or Defendants' Counsel consistent with the Claims Administrator's duties specified herein;

(14)   referring to Class Counsel all inquiries by Class Members regarding matters not within the Settlement Claims Administrator's duties specified herein;

(15)   promptly apprising Class Counsel and Defendants' Counsel of the activities of the Settlement Claims Administrator and maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;

(16)   promptly providing copies to Class Counsel and Defendants' Counsel of any Opt-Out Statements and Objections submitted by Class Members;

(17)   distributing any Court-approved Service Awards;

(18)   preparing and mailing Counsel's attorneys' fees, expenses, and costs and settlement payments in accordance with this Settlement Agreement and the Court's Final Approval Order;

(19)   providing copies of the Settlement Checks and the endorsement of same to Class Counsel and Defendants' Counsel upon request;

(20)   providing a final report, deliverable to Class Counsel and Defendants' Counsel, detailing the results of the class mailings and participation;

(21)   providing Class Counsel and Defendants' Counsel with any necessary documents regarding the claims administration process that Class Counsel and/or Defendants' Counsel may need in order to file a Motion for Final Approval of the Settlement, object to same, or appeal the Court's decision on same;

(22)   provide Class Counsel with a list of outstanding Settlement Checks thirty (30) days prior to their expiration  or if returned. Class Counsel shall attempt to notify Claimants who have not cashed their checks;

(23)   timely provide notices no later than ten (10) days after preliminary approval of the class settlement is obtained, as required by the Class Action Fairness Act ("CAFA"); and

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

(24)     such other tasks upon which the Parties may mutually agree.

(C)     The Parties will have equal access to the Settlement Claims Administrator, and the Settlement Claims Administrator will provide regular reports to the Parties, but no less frequently than every two (2) weeks, regarding the status of the mailing of the Notices to Class Members and IRS Forms to Class Members, the claims administration process, the identity and number of Class Members who object and/or opt-out of the Settlement, and the distribution and redemption of the Settlement Checks.

(D)     In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendants' Counsel (a) a list of all Class Members who filed a timely objection and (b) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period.  The Settlement Claims Administrator shall also provide Defendants with an updated address list for Class Members. Throughout the period of claims administration, the Settlement Claims Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices to Class Members, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

(E)     Also, within fifteen (15) days before the Fairness Hearing the Claims Administrator shall provide a payment summary to the Parties for review and approval. The payment summary shall include (1) Class Counsel's attorney fees and costs; (2) Settlement Costs, including all Administrator Costs; (3) service awards to the Named Plaintiffs; (4) each Claimant's Individual Settlement Amount in accordance with the allocation agreed upon by the Parties; and (5) each Claimant's Individual Settlement Amount broken out by the 1099 payment and the W-2 income payment, less all applicable tax contributions and withholdings

2.7     The Parties agree to reasonably cooperate with the Settlement Claims Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and reasonably assist the Settlement Claims Administrator in locating Class Members and updating information concerning Class Members.

2.8     **Notice to Class Members**

(A)     Within thirty (30) calendar days after the Court issues the Preliminary Approval Order, Defendants' Counsel will provide the Claims Administrator and Class Counsel with a list in Microsoft Excel format, of each Class Member's (1) name, (2) last known mailing address, (3) position held while employed by Defendants, and, (4) the total number of hours worked by each Class Member between November 14, 2014 and the date the Court enters the Preliminary Approval Order (the "Class List"), to the extent such information is available to Defendants.

(B)     Within fourteen (14) days of receipt of the Class List, the Settlement Claims Administrator will mail to all Class Members, via First Class United States Mail, postage prepaid, the Court-approved Class Notice, IRS Forms and Claim Form.

(C)     The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable, including one skip trace, and shall attempt one re-mailing for all Class Members for whom it obtains a more recent address. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement. The Settlement Claims Administrator shall also mail a Class Notice to any Class Member who requests a re-mail.

(D)     Each Class Member must submit his/her completed Claim Form to the Settlement Claims Administrator no later than the Claim Form Deadline in order to receive his or her Individual Settlement Amount. The postmark date of the Claim Form mailed by the Settlement Claims Administrator to the Class Member and the postmark date of the Claim Form mailed by the Class Member to the Settlement Claims Administrator shall be the exclusive means for determining whether a Class Member timely submitted his/her Claim Form.

(E)     Only those Class Members who timely complete and return a Claim Form and IRS Forms as set forth herein will be deemed Claimants. The Plaintiffs who sign this Agreement will be deemed Claimants even if they do not submit a Claim Form. Any money unclaimed from the Settlement Common Fund or the Qualified Settlement Fund will revert back to Defendants.

(D)      In the event that individuals who claim to be Class Members but are not on the Class List come forward prior to the Opt-out Date, Class Counsel and Defendants' Counsel shall meet and confer in good faith in an attempt to determine if any such individual(s) are Class Members and resolve issues relating to any such individual(s). The determination and allocation amount agreed to by Class Counsel and Defendants' Counsel with respect to any such individual(s) will be presumed to be accurate.

**2.9     Class Member Opt-Outs.**

(A)     Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone number, and state: "I opt out of the Ram Caterers wage and hour settlement." ("Opt-Out Statement").  To be effective, an Opt-Out Statement must be postmarked by the Claim Form Deadline.

{01120563.DOCX.4}

(B)     The end of the time period to opt-out of the settlement ("Opt-Out Period") shall be the Claim Form Deadline.

(C)     The Settlement Claims Administrator will stamp the received date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-Out Statement on Class Counsel and Defendants' Counsel no later than three (3) days after receipt thereof.  The Settlement Claims Administrator will, within three (3) days of the end of the Opt-Out Period, file with the Clerk of the Court, stamped copies of any Opt-Out Statements. The Settlement Claims Administrator will, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements it received to Class Counsel and Defendants' Counsel by e-mail. The Settlement Claims Administrator will retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(D)     Any Class Member who does not submit an Opt-Out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Judgment in this case, and have any Released Class Claims released and dismissed with prejudice.

**2.10    Objections to Settlement.**

(A)     Class Members who wish to present objections to the proposed settlement Agreement at the Fairness Hearing must first do so in writing.  To be considered, such Objections must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be mailed by the Claim Form Deadline.  The statement must include all reasons for the objection and any reasons not included in the statement will not be considered. The statement must also include the name, job title, address, and telephone numbers for the Class Member making the objection. The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email no later than three (3) days after receipt thereof.  The Settlement Claims Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Opt-Out Period.

(B)     An Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.  An Objector may withdraw his or her objections at any time. No Objector may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-Out Statement may not submit objections to the Settlement.

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

(C)     The parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.11    Motion for Judgment and Final Approval.** No later than seven (7) calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval. Defendants will not oppose the Final Approval Motion provided it is consistent with the terms of this Settlement Agreement. The Motion for Final Approval may contain a compliance affidavit from the Claims Administrator, an application for attorneys' fees, costs, Service Award and Release Payment and supporting affirmation and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the Settlement or any aspect related to this Agreement. The Motion for Final Approval may also include a proposed Final Approval Order. The Fairness Hearing shall be held at the Court's convenience.

**2.12    Entry of Judgment.** At the Fairness Hearing and in the Motion for Final Approval and Dismissal, the parties will request that the Court, among other things: (1) certify the NYLL Class and FLSA Class for purposes of settlement; (2) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (3) order the Settlement Claims Administrator to distribute Settlement Checks to Class Members; (4) order any Court-approved Service Awards, to be paid from the QSF, to individuals as described in this Agreement; (5) order Court-approved attorneys' fees and costs to be paid to Class Counsel from the QSF; (6) order Court-approved Claims Administrator's fees to be paid to the Claims Administrator from the QSF (7) order the dismissal with prejudice of all claims asserted in the Litigation and the claims of all Class Members who did not opt-out; (8) order entry of Final Judgment in accordance with this Agreement; and (9) retain jurisdiction as necessary for the purpose of enforcing the administration of the settlement, and  for the purposes of the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.13    Effect of Failure to Grant Final Approval.** In the event the Court denies the Motion for Final Approval the parties will resume the Litigation unless the parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying Final Approval; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted. In that event, any class and/or collective certified for purposes of settlement shall be automatically decertified, and Defendants may contest whether this Litigation should be maintained as a class action or collective action and contest the merits of the claims asserted by Plaintiffs in this action.

In the event the Court denies the Motion for Final Approval, the Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Claimants under the Agreement. The content of such notice shall be agreed to by the parties and such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail,

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notices. Any amounts paid by Defendants to the Settlement Claims Administrator shall be returned to Defendants within fifteen (15) days after the Court files an opinion or order rejecting or otherwise not approving the settlement.

## 3.    SETTLEMENT TERMS

### 3.1    Settlement Amount.

(A)    Defendant Ram Caterers agrees to pay One Million Three Hundred Twenty-Five Thousand Dollars and Zero Cents ($1,325,000.00) towards the settlement, which shall be the maximum amount Defendants will pay in this settlement ("Maximum Settlement Amount"), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Claimants, any Court-approved Service Awards to Plaintiffs, any fees and costs associated with investing and liquidating the Qualified Settlement Fund, and the Settlement Claims Administrator's fees and costs.

(B)    Defendant Ram Caterers shall fund the Qualified Settlement Fund by paying Five Hundred Thousand Dollars and Zero Cents ($500,000.00), plus any funds necessary to fund the employer's shares of payroll taxes resulting, to the Settlement Claims Administrator, by thirty (30) days after the date Final Approval is granted by the Court.

(C)    Defendant Ram Caterers shall, in the event additional amounts are needed to satisfy amounts to be paid to Claimants, any Court-approved Service Awards, attorneys' fees and costs approved by the Court, or fees and costs associated with the Settlement Claims Administrators, fund the Qualified Settlement Fund to the extent needed to satisfy such additional amount, up to the Maximum Settlement Amount within 30 days following notice by the Claims Administrator which only can occur after the initial funds as referred to in paragraph 3.1(B) are exhausted.

### 3.2    Settlement Amounts Payable as Attorneys' Fees, Expenses and Costs.

(A)    Prior to the Fairness Hearing, Class Counsel shall petition the Court for reimbursement of their reasonable litigation costs, expenses and attorneys' fees from                                                                                        the Qualified Settlement Fund, which shall be no more than one-third of the Maximum Settlement Amount from the Qualified Settlement Fund, and which shall not exceed $437,250.00, which represents one-third (1/3) of the Maximum Settlement Amount. Defendants will not oppose such application provided the application is consistent with the terms of this Agreement.  Defendants shall have no additional liability for attorneys' fees and/or costs in connection with this matter.

(B)    The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any reduction by the Court of Class Counsel's application for attorneys' fees and costs shall become part of the Net Settlement Fund and shall be subject to allocation and the reversion of Unredeemed Funds as defined above.

### 3.3   Service Awards to Plaintiffs.

(A)   In return for services rendered to the Class Members, at the Fairness Hearing, Plaintiffs will each apply to the Court to receive no more than Six Thousand Dollars and Zero Cents ($6,000.00) each from the Qualified Settlement Fund as Service Awards and in consideration for signing the Agreement.

(B)   The outcome of the Court's ruling on the application for the Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.  Should all or part of any Service Award sought not be approved by the Court, the amount not approved shall become part of the Net Settlement Fund.

(C)   In consideration for receipt of the Service Award, if any, and their respective shares of the QSF, Plaintiffs agree to the release set forth in Section 4.1(C).

### 3.4   Net Settlement Fund and Distribution to Class Members.

(A)   The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B)   Each Class Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following terms:

(1)   The Net Settlement Fund shall be distributed among Class Members who were employed by Defendants in Tip Eligible Positions at 21 Old Westbury Road, Old Westbury, NY 11568 and/or the Trump National Doral Miami during the Relevant Statutory Period.

(2)   Notwithstanding the formulas agreed upon by the Parties, no Class Member will be awarded a payment that is less than the Alternative Minimum Benefit, which equals Thirty Dollars and Zero Cents ($30.00).  In the event that any Class Members' award must be increased to the Alternative Minimum Benefit the difference shall be borne proportionately by other Class Members.

(3)   The Net Settlement Fund shall be allocated on a pro rata basis according to the following formula: (1) calculate the total number of hours each Class Member worked from November 14, 2014 to the date the motion for Preliminary Approval is submitted to the Court; (2) divide each Class Member's total hours worked in the same time period by the total number

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

of hours worked by all of such Class Members from November 14, 2014 to the date the motion for Preliminary Approval is submitted to the Court to derive a percentage; and (3) each of such Class Member's Individual Settlement Amount will equal their respective percentage of the Net Settlement Fund.

(C)     In the event a Class Member believes the information the Settlement Claims Administrator relied on to calculate their Individual Settlement Amount was in error, the Class Member may raise their concerns with Class Counsel. If Class Counsel believes there is merit to any such concerns, they will bring these concerns to Defendants' Counsel's attention and the Parties will work together to resolve the issue.

(D)     The Parties and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.6.

(E)     Only those Class Members that have submitted a timely Claim Form (with valid IRS Forms enclosed) will be able to participate as Claimants and receive a portion of the Net Settlement Fund.

(F)     The Claims Administrator shall mail to all Claimants their share of the Net Settlement Fund.  The Claims Administrator shall use reasonable efforts to make an additional mailing to Claimants whose checks are returned because of incorrect addresses. Such efforts shall include using Social Security Numbers to obtain updated address information. Participating Class Members who do not return timely Claim Forms (with valid IRS Forms) will not receive any distribution from the Net Settlement Fund.

**(G)**     Claimants will have ninety (90) calendar days after each check date to redeem their settlement payment check. If a Claimant does not redeem their settlement payment check within the 90-day period, their settlement checks will be void and a stop-payment will be placed.  In such event, the Claims Administrator shall remit any such Claimant's uncashed check amount to the Defendants.

## 3.5    Claims Administrator's Fees.

(A)     In connection with the motion for Final Approval, Class Counsel will submit a declaration from the Claims Administrator detailing the administration process, and will petition the Court for an award of administration fees not to exceed [INSERT AMOUNT]. The Claims Administrator's fees shall be paid by Defendant Ram Caterers within thirty (30) days from the date of Final Approval.

(B)     The Claims Administrator's fees and expenses are not part of this Agreement and are to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

outcome of any proceeding related to the request for Claims Administrator costs and expenses shall not terminate this Agreement.

**3.6    Tax Characterization**

(A)    For tax purposes, the payments to Claimants pursuant to Section 3.4 will be allocated as follows for tax purposes: (i) 50% in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting, and (ii) 50% in consideration for liquidated damages, statutory fines and interest as non-wage payments subject to 1099 reporting.

(B)    Payments treated as back wages pursuant to Section 3.6(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. The employers' share of applicable taxes shall be borne by Defendant Ram Caterers and not deducted from the Settlement Common Fund. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding. Class Counsel will receive an IRS Form 1099 for this payment of attorneys' fees and costs, and individual Claimants shall receive a Form 1099 with their pro rata share for their payment of liquidated damages. Any Service Award payments pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)    The Claims Administrator shall be responsible for making all withholdings from Claimants' settlement payments required pursuant to any federal, state, or local tax law or regulation, with respect to the amounts treated as wages pursuant to Section 3.6(A).

(D)    Each individual Claimant will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement, other than FICA tax and any federal and state unemployment tax due that are traditionally borne by employers. The Plaintiffs, on behalf of the Class, acknowledge and agree that they have not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

**4.    RELEASE**

**4.1    Release of Claims.**

(A)    **Release of State Claims.** Upon the Order granting Final Approval, and except as to such rights or claims as may be created by this Agreement, each Participating Class Member, on his or her behalf, and on behalf of his or her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Defendants, and all of their insurers, affiliates, subsidiaries and related entities and all of their past, present and future officers,

{01120563.DOCX.4}

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

directors, shareholders, owners, employees, agents, attorneys and assigns, specifically including but not limited to Debra Auerbacher, Kenneth Grief, William Kohane, VIP & RAM Passover, LLC, Ram Destinations LLC, Ram Destinations Miami, LLC, Simply Ram LLC, C&I Consulting, and RCOP 2 LLC (collectively, the "Releasees") from any claims under the New York Labor Law, New York Wage Theft Prevention Act, the New York State Hospitality Wage Order, and/or any other applicable New York State Wage Orders, including but not limited to claims for unpaid wages, overtime pay, unpaid tips, unpaid purported gratuities, failure to maintain and furnish employees with proper wage records, paystubs, notices, interest, liquidated damages, and attorneys' fees and costs related to such claims, and all other claims that were or could have been asserted in the Litigation under New York Labor law, New York Wage Theft Prevention Act, the New York State Hospitality Wage Order, and/or any other applicable New York State Wage Order, whether known or unknown, through the date of this Agreement is preliminary approved by the Court, for the time they were employed by Defendants in Tip Eligible   Positions at 21 Old Westbury Road, Old Westbury, NY 11568 and/or the Trump National Doral Miami during the Relevant Statutory Period.

(B)    **Release of Claimants' Federal Claims.** In addition, each Claimant, on his or her own behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Defendants and Releasees from any FLSA claims relating to the time they were employed by Defendants in Tip Eligible Positions  at 21 Old Westbury Road, Old Westbury, NY 11568 and/or the Trump National Doral Miami during the Relevant Statutory Period, including claims for unpaid wages and/or overtime wages, unpaid tips, unpaid purported gratuities, liquidated damages, and attorneys' fees and costs related to such claims, that were or could have been asserted in the Litigation, whether known or unknown, through the date each respective Claimant signs a Claim form.

(C)    **Release of Plaintiffs' Claims.**

(1)    **General Release.** In addition to the waivers and releases contained in 4.1(A)-(B) above, Plaintiffs knowingly and voluntarily, on their behalf and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully release and discharge Defendants and Releasees from any and all claims arising up to and as of the date they execute this Agreement, both known and unknown, which the Plaintiffs have or may have against Defendants and Releasees relating to the time they were employed by Defendants in Tip Eligible Positions at 21 Old Westbury Road, Old Westbury, NY 11568 and/or the Trump National Doral Miami during the Relevant Statutory Period, including, but in no way limited to, any alleged violation of the National Labor Relations Act, 29 U.S.C. §151 et seq.; the Fair Labor Standards Act, 29 U.S.C. §201, et seq.; the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq.; the Civil Rights Acts of 1964 and 1991, 42

U.S.C. §2000e et seq.; the Civil Rights Act of 1866, 42 U.S.C. §1981 et seq.; the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq.; the Equal Pay Act of 1963, 29 U.S.C. §206(d); the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.; the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq.; the Older Workers Benefit Protection Act, 29 U.S.C. §621 et seq.; Worker Adjustment and Retraining Notification (WARN) Act; the Consolidated Omnibus Budget Reconciliation Act of 1985fN, I.R.C. § 4980B; the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff; the Sarbanes-Oxley Act of 2002, 18 U.S.C. §1514A, et seq.; the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub Law. No. 111-203; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; the Families First Coronavirus Response Act, PL 116-127; the New York Sick Leave Law; the New York Quarantine Leave Law, 2020 Sess. Law of N.Y. Ch. 25 (S. 8091);  the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York State Civil Rights Law, Civil Rights Law § 40 et seq.; the New York Equal Pay Law, Labor Law §§ 194-198; the New York Whistleblower Law, Labor Law §§ 740-741; Article 23-A of the New York Correction Law; the New York Paid Family Leave Benefits Law; the New York occupational safety and health laws; the New York Labor Law; the New York wage hour and wage-payment laws; the New York Wage Theft Prevention Act; The New York Hospitality Wage Order and any other applicable New York State Wage Order, and/or any other federal, state or local statute, law, ordinance, regulation or order, or the common law, or any self-regulatory organization rule or regulation. This general release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, penalties, interests, and attorneys' fees' and costs.

(2)     **Revocation.**  Plaintiffs represent that they have been advised to consult legal counsel regarding this Agreement prior to their execution of same and that they have been represented by Monteiro & Fishman, LLP. Plaintiffs each further represent that they have been provided the opportunity of at least twenty-one (21) days to consider this Agreement, and should they sign prior to the expiration of such twenty-one (21) day period they are doing so freely and voluntarily and acknowledge that (a) the benefits provided in this Agreement are available notwithstanding her/his choice to waive, or not waive this period and (b) that this waiver was not in any way coerced or compelled by any of the Releasees.

(a)     Plaintiffs each acknowledge and represent that they fully understand all of the provisions of this Agreement, have had the opportunity to ask questions and are executing same freely and voluntarily.

(b)     Plaintiffs each further understand that they can revoke their acceptance by communicating such revocation in writing, via e-mail, so as to be received by the Defendants' Counsel at the

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

addresses set forth below within seven (7) days of her/his execution of the Agreement.

*Defendants' Counsel*
Ilan Weiser, Esq. (iweiser@egsllp.com)
Lois Traub, Esq. (ltraub@egsllp.com)
Joseph Tangredi, Esq. (jtangredi@egsllp.com)

Ellenoff Grossman & Schole LLP

(c)      In the event that any Plaintiff revokes their signature to the Agreement, such Plaintiff shall forfeit their entitlement to receive a Service Award pursuant to paragraph 3.3.

(D)     **Release of Fees and Costs for Settled Matters.** Class Counsel and Plaintiffs on behalf of the Class and each individual Class Member and Claimant, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants and Releasees for attorneys' fees or costs associated with Class Counsel's representation of the Plaintiffs, the Class, and/or the Claimants in this Litigation. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of such individuals in this Litigation.

(E)     **Non-Admission of Liability.**  By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs, and/or the Class, individually or collectively, with all such liability being expressly denied. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible as evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**5.     NON-DISPARAGEMENT.**

Plaintiffs and Class Counsel agree that they will not issue or cause to be issued any press release or communication to any third party and will not otherwise communicate to any media or media representative, including but not limited to any electronic, print, or digital media or social networking site, information regarding the Litigation. If contacted by the

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

press or other forms of media, including but not limited to any blogs or other social media websites, Plaintiffs and Class Counsel will state that "the matter has been resolved to the satisfaction of all parties."  Defendants will not issue or cause to be issued a press release regarding the settlement of the Litigation.  If contacted by the press or media, Defendants will not disparage Plaintiffs and/or Class Counsel.  Notwithstanding the terms of this paragraph, the Parties shall be free to make whatever disclosures they deem necessary and appropriate to their attorneys, immediate family, partners, and financial and tax advisors, provided those disclosures are truthful, or any disclosures required by law or court order. Nothing herein shall prevent Class Counsel and Plaintiffs from communicating with Class Members in order to comply with their obligations to the FLSA Class and NYLL Class.  If the Court finds all or part of this paragraph to be unenforceable, it shall not affect any other portion of this Agreement. Notwithstanding the foregoing, each party to this Litigation and their Counsel may make a truthful statement about their own experience in litigating this case should it otherwise comply with this provision.

## 6.     INTERPRETATION AND ENFORCEMENT.

**6.1     Cooperation Between the Parties; Further Acts.**  The Parties and their respective counsel shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**6.2     No Assignment.**  Class Counsel and Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**6.3     Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**6.4     Binding Effect.**  This Agreement is a binding agreement and contains all material agreed-upon terms, subject to court approval.

**6.5     Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**6.6     Captions.**  The captions or headings of the Sections and Paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

**6.7    Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**6.8    Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**6.9    Continuing Jurisdiction.** The Court shall retain jurisdiction over the enforcement, interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the enforcement, interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

**6.10    Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect, and the parties will make all reasonable efforts to renegotiate the provision(s) held void, voidable, unlawful or unenforceable, and enter into a new Agreement on terms similar to those herein so that such provision(s) will be upheld.

**6.11    Remedies for Breach.** Should any party breach the terms of this Agreement as determined by the Court which retains jurisdiction over enforcement of this Agreement, the non-breaching party shall be entitled, in addition to any other legal and equitable remedies which may be available, to recover all costs and attorneys' fees incurred by such non-breaching party in enforcing the terms of this Agreement.

**6.12    Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**6.13    When Agreement Becomes Effective; Counterparts.** Subject to Court-approval, this Agreement shall become effective upon its full execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

**6.14** **Signatures.**  This Agreement is valid and binding if signed by all the Defendants and Plaintiffs.

**6.15** **Facsimile, Electronic, and Email Signatures.**  Any signature made or electronically made and/or transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

{01120563.DOCX.4}

**PLAINTIFFS:**

May 12, 2022

Date

By: Rakin Subhan (May 12, 2022 05:17 GMT+9)

RAKIN SUBHAN

_____

Date

By: _____

MOIN MAHBUB

_____

Date

By: _____

DAVID KAY

_____

Date

By: _____

ASHLEY CLEATOR

_____

Date

By: _____

JAMES HICKS

{01120563.DOCX.4}

**PLAINTIFFS:**

_____    By: _____
Date                            RAKIN SUBHAN

                                    _M. Mahbub_
May 11, 2022                By: Moin mahbub (May 11, 2022 15:59 EDT)
_____        _____
Date                            MOIN MAHBUB

_____    By: _____
Date                            DAVID KAY

_____    By: _____
Date                            ASHLEY CLEATOR

_____    By: _____
Date                            JAMES HICKS

{01120563.DOCX.4}

**PLAINTIFFS:**

_____     By: _____
Date                                          RAKIN SUBHAN


_____     By: _____
Date                                          MOIN MAHBUB


May 12, 2022                       By: _____
_____             David kay (May 12, 2022 10:13 EDT)
Date                                          DAVID KAY


_____     By: _____
Date                                          ASHLEY CLEATOR


_____     By: _____
Date                                          JAMES HICKS


{01120563.DOCX.4}

**PLAINTIFFS:**

_____     By: _____
Date                             RAKIN SUBHAN


_____     By: _____
Date                             MOIN MAHBUB


_____     By: _____
Date                             DAVID KAY


May 11, 2022                By: _____
                                 Ashley cleator (May 11, 2022 16:21 EDT)
Date                             ASHLEY CLEATOR


_____     By: _____
Date                             JAMES HICKS

{01120563.DOCX.4}

**PLAINTIFFS:**

_____     By: _____
Date                                            RAKIN SUBHAN



_____     By: _____
Date                                            MOIN MAHBUB



_____     By: _____
Date                                            DAVID KAY



_____     By: _____
Date                                            ASHLEY CLEATOR



May 11, 2022                        By: James R Hicks (May 11, 2022 16:29 EDT)
Date                                            JAMES HICKS

{01120563.DOCX.4}

**DEFENDANTS**

SIMON AUERBACHER

5/12/2022
_____      By: _*Simon Auerbacher*_____
Date                                                SIMON AUERBACHER
                                                    Title: SA


RAM DESTINATIONS MIAMI, LLC

5/12/2022
_____      By: _*Simon Auerbacher*_____
Date                                                Name : Simon Auerbacher
                                                    Title: SA


RAM CATERERS OF OLD WESTBURY LLC

5/12/2022
_____      By: _*Simon Auerbacher*_____
Date                                                Name : Simon Auerbacher
                                                    Title: SA

# EXHIBIT A

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

**COVER LETTER (to be sent on Settlement Claims Administrator letterhead)**

DATE

NAME
ADDRESS
CITY, STATE ZIP CODE

**Re:    NOTICE OF CLASS ACTION SETTLEMENT**
        (*Subhan, et al v. Auerbacher, et al*, No. 20-cv-5541)

Dear [NAME],

According to Defendants' records, you were employed by Defendants in a tip-eligible position at 21 Old Westbury Road, Old Westbury, NY 11568 and/or the Trump National Doral Miami during the time period covered by a class action lawsuit for unpaid wages/gratuities.  A tip eligible positions means bar staff, captains who provide direct food service to customers, coat check attendants, hosts, and wait staff.  The Parties have reached a settlement in that lawsuit under which you are eligible to receive a portion of the settlement.  Enclosed herein is a Court approved Notice, Claim Form, Form W-4 and Form W-9.  In order to receive payment under the settlement, you must sign the three enclosed forms entitled "CLASS MEMBER CLAIM FORM" and "SUBSTITUTE FORM W-9 REQUEST FOR TAXPAYER IDENTIFICATION NUMBER" and "SUBSTITUTE FORM W-4 FOR TAXPAYER IDENTIFICATION NUMBER."  You will not receive money from the settlement unless you submit a Claim Form, IRS Form W-4, and IRS Form W-9 by [DATE].  In order to receive your settlement amount, these forms must be mailed to the address listed in the Claims Form.

For full information about the settlement and how to claim your share of the settlement, please contact the plaintiffs' attorney Marcus Monteiro, Monteiro & Fishman LLP, at (516) 280-4600.

Sincerely,

[Settlement Claims Administrator]

{01120563.DOCX.4}

## NOTICE OF PROPOSED CLASS ACTION LAWSUIT SETTLEMENT
## AND FAIRNESS HEARING

**6.16    TO:**    PERSONS WHO WERE EMPLOYED BY DEFENDANTS IN TIP-ELIGIBLE POSITIONS AT 21 OLD WESTBURY ROAD, OLD WESTBURY ROAD, NY 11568 AND/OR THE TRUMP NATIONAL DORAL MIAMI BETWEEN NOVEMBER 14, 2014 AND [DATE OF PRELIMINARY APPROVAL]. TIP ELIGIBLE POSITIONS MEANS BAR STAFF, CAPTAINS WHO PROVIDE DIRECT FOOD SERVICE TO CUSTOMERS, COAT CHECK ATTENDANTS, HOSTS, AND WAIT STAFF.

Based on information from Defendants, you were employed by Defendants in a tip-eligible position at 21 Old Westbury Road, Old Westbury, NY 11568 and/or the Trump National Doral Miami between November 14, 2014 and [DATE OF PRELIMINARY APPROVAL] and are entitled to participate in the proposed settlement of the case captioned *Subhan, et al v. Auerbacher, et al*, No. 20-cv-5541 (E.D.N.Y.) (the "Lawsuit"). The Lawsuit was brought by Rakin Subhan, Moin Mahbub, David Kay, and Ashley Cleator against Simon Auerbacher, Ram Destinations Miami LLC, and Ram Caterers of Old Westbury LLC (collectively "Defendants").

Under the terms of the settlement, you may claim money under the Settlement.  A claim form is enclosed with this notice.  You will receive money from this settlement only if you return the attached claim form and valid and fully executed IRS Forms W-4 and W-9 to the claims administrator on or before **[INSERT DATE].**

Your legal rights are affected whether you act, or don't act. Please read this notice carefully.

Your rights and options – **and the deadlines to exercise them** – are explained in this Notice.

The Court in charge of this case still has to decide whether to approve the settlement.  Payments will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.

| 1.   WHAT IS THE PURPOSE OF THIS NOTICE? |
|---|

**PLEASE READ THIS NOTICE CAREFULLY.**  It contains important information about your rights concerning the settlement of the Lawsuit.  If the Court approves the Settlement Agreement, each Class Member will be bound by its terms unless he/she affirmatively opts-out of the Settlement Agreement.

The Court has ordered that this Notice be sent to you to inform you of your rights under the Settlement Agreement resolving the Lawsuit.

| 2.   WHAT IS THIS CASE ABOUT? |
|---|

The Lawsuit asserts claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") alleging that Defendants failed to properly pay employees in tip eligible positions

for all overtime hours, the applicable minimum wage rate, and spread of hours. The Lawsuit also alleges that employees were not provided with the appropriate wage notices and wage statements that Defendants were required to provide them with.  Finally, the Lawsuit alleges that Defendants misappropriated portions of employees' tips.

**DEFENDANTS DENY THESE ALLEGATIONS IN THEIR ENTIRETY AND MAINTAIN THAT ALL TIP-ELIGIBLE EMPLOYEES WERE PAID PROPERLY AND RECEIVED ALL MONIES OWED.**  The Parties have entered into this Settlement Agreement solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expense. The Court has not made any ruling on the merits of the claims in the Lawsuit, and no party has prevailed in this action.

## 3. WHO IS INCLUDED IN THE CLASS?

The Parties have agreed to settle the Lawsuit for a class consisting of all individuals employed by Defendants in tip-eligible positions at 21 Old Westbury Road, Old Westbury, NY 11568 and/or the Trump National Doral Miami between November 14, 2014 and [THE DATE OF PRELIMINARY APPROVAL] ("Class Members"). You have received this notice because Ram Caterers has identified you as a Class Member based on their records.

## 4. HOW WILL MY SHARE OF THE SETTLEMENT FUND BE CALCULATED?

If the Settlement Agreement is given final approval by the Court, Defendants will pay up to a maximum of $1,325,000.00 in total settlement funds.  If the Court also approves the payments set forth below, the following payments and expenses will be deducted from the $1,325,000.00 prior to distribution of the settlement funds to Claimants:

1. Attorneys' Fees and Costs: Class Counsel will apply to the Court for recovery of costs and attorneys' fees of one-third of the Settlement Fund after deducting their costs.  This amount will be requested pursuant to the Plaintiffs' professional services agreement.

2. Service Awards:  If the Court approves such payments, $6,000 will be paid to each of the Named Plaintiffs and Opt-in Plaintiff.

3. Claims Administrator Costs:  Class Counsel will apply to the Court for recovery of all costs of administration of this settlement.

4. If the Court approves the payments listed above, the remaining Settlement Fund (the "Net Settlement Fund") will be allocated to Class Members based on the amount of hours they worked in tip-eligible positions between November 14, 2014 and [THE DATE OF PRELIMINARY APPROVAL].

- No Class Member will be allocated a settlement share that is less than $30.

- Once checks are issued they will be valid for only 90 days.

{01120563.DOCX.4}

DocuSign Envelope ID: AB3343C9-698C-4809-8F9E-D230C7AC253D

- For more information about how individual settlement awards are calculated, you may contact Class Counsel, Marcus Monteiro at Monteiro & Fishman LLP, at 91 N. Franklin Street, Suite 108, Hempstead, NY 11550 at 516-280-4600.

- If you do nothing, you will remain part of the case, not receive payment and still be bound by the terms of this Settlement Agreement.

## 5. HOW CAN I COLLECT MY SHARE OF THE SETTLEMENT?

In order to collect your share of the settlement, you must fill out the enclosed Claim Form, IRS Form W-4, and IRS Form W-9. If you do not fill out a Claim Form or do not provide an IRS Form W-4, and IRS Form W-9, you will not receive any money from this settlement. Attached to this Notice is a Claim Form, IRS Form W-4, and IRS Form W-9 which you must fill out and mail, postmarked on or before _____,_____ , to:

**CLAIMS ADMINISTRATOR'S INFO**

Defendants cannot retaliate against you for participating in this Settlement and/or filing a Claim Form.

It is your responsibility to retain proof of timely mailing or submission of a Claim Form, IRS Form W-4, and IRS Form W-9 until receipt of your settlement payment. If you move, you must send the Claims Administrator your new address. It is your responsibility alone to provide a forwarding address to the United States Post Office and your current address to the Claims Administrator.

If you are found eligible to participate in the Settlement, you should not expect to receive any payment until the Settlement is final, which will likely be several months away.

## 6. WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?

Upon the Order granting Final Approval, and except as to such rights or claims as may be created by this Agreement, each Participating Class Member, on his or her behalf, and on behalf of his or her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Defendants, and all of their insurers, affiliates, subsidiaries, and related entities, and all of their past, present and future officers, directors, shareholders, owners, employees, agents, attorneys and assigns, specifically including but not limited to, Debra Auerbacher, Kenneth Grief, William Kohane, VIP & RAM Passover, LLC, Ram Destinations LLC, Simply Ram LLC, C&I Consulting, and RCOP 2 LLC (collectively, the "Releasees") from any claims under the New York Labor Law, New York Wage Theft Prevention Act, the New York State Hospitality Wage Order and/or any applicable New York State Wage Order, including but not limited to claims for unpaid wages, overtime pay, unpaid tips, unpaid purported gratuities, failure to maintain and furnish employees with proper wage records, paystubs, notices, interest, liquidated damages, and attorneys' fees and costs related to such claims, and all other claims that were or could have been asserted in the Litigation under New York Labor Law, New York Wage Theft Prevention Act, the New York State Hospitality Wage Order, and/or any applicable New

DocuSign Envelope ID: AB3343C9-698C-4809-8F9E-D230C7AC253D

York State Wage Order whether known or unknown, through the date of this Agreement is preliminarily approved by the Court, for the time they were employed by Defendants in tip eligible positions at 21 Old Westbury Road, Old Westbury, NY 11568 and/or the Trump National Doral Miami during the Relevant Statutory Period.

In addition, if you sign and return a Claim Form that is accepted pursuant to this Settlement, you, on your own behalf, and on behalf of your respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Defendants and Releasees from any FLSA claims relating to the time you were employed by Defendants in tip eligible positions at 21 Old Westbury Road, Old Westbury, NY 11568 and/or the Trump National Doral Miami during the Relevant Statutory Period, including claims for unpaid wages and/or overtime wages, unpaid tips, unpaid purported tips, liquidated damages, and attorneys' fees and costs related to such claims, that were or could have been asserted in the Litigation, whether known or unknown, through the date you sign a Claim form.

## 7. HOW DO I OPT OUT OF THE SETTLEMENT CLASS?

You have the option of opting-out of the Settlement Agreement if you do not want to participate in the Settlement or be bound by the release of claims described above. To opt-out of the Settlement Agreement you must do so by _____. If you do not opt out, you will be bound by the terms of the Settlement Agreement. To opt out, you must mail a signed letter which specifically states, "I elect to exclude myself from the settlement in *Subhan, et al. v. Auerbacher, et al.,* Case No. 20-cv-05541" postmarked no later than _____. You must include your name and address in the letter. If you choose to opt out, send your letter to:

[CLAIMS ADMINISTRATOR]

## 8. WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?

If you have not opted out of the Settlement, and if you wish to present objections to the proposed settlement at the Fairness Hearing, you must first do so in writing. You are not required to submit an objection. Written objections must be postmarked no later than _____ and sent to:

[CLAIMS ADMINISTRATOR]

Written objections must contain your name and address, must be signed by you, and must include reference to the matter of *Subhan, et al. v. Auerbacher, et al.,* Case No. 20-cv-05541. If you opt-out of the settlement, you may not also object to the settlement.

## 9. WHEN IS THE FAIRNESS HEARING?

A hearing before Magistrate Judge Anne Y. Shields will be held on _____ at _____ at the United States District Court for the Eastern District of New York, 100 Federal Plaza, Central Islip, New York 11722 (the "Fairness Hearing"). The purpose of this hearing will be for the Court to determine whether the Settlement Agreement is fair, adequate, and reasonable and should be approved by the Court. The Court will take into account any comments or objections filed in accordance with the procedures described above.

{01120563.DOCX.4}

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

| **10. HOW CAN I EXAMINE COURT RECORDS?** |
|---|

This Notice does not contain all of the terms of the proposed Settlement or all of the details of these proceedings.  For more detailed information, you are advised to refer to the underlying documents and papers on file with the Court.

Additionally, if you have questions about this Notice or want additional information, you can contact Marcus Monteiro at Monteiro & Fishman LLP, at 516-280-4600 or the Claims Administrator at the address/phone number listed above.

{01120563.DOCX.4}

# EXHIBIT B

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

## CLASS MEMBER CLAIM FORM

*Subhan, et al. v. Auerbacher, et al.,* Case No. 20-cv-5541

To share in the settlement, you <u>must</u> complete, sign and return this claim form and the enclosed IRS Form W-4 and IRS Form W-9. You will not receive any payment from the settlement unless you submit this claim form, the IRS Form W-4, and the IRS Form W-9. The claim form must be postmarked no later than _____, ____

**MAIL TO:**
*Subhan, et al. v. Auerbacher, et al.*
**[CLAIMS ADMINISTRATOR]**
**[ADDRESS / PHONE/]**

.

The records of Defendants indicate that you were employed by Defendants in a tip eligible position at 21 Old Westbury Road, Old Westbury, NY 11568 and/or the Trump National Doral Miami between November 14, 2014 and [THE DATE OF PRELIMINARY APPROVAL]. Based on the hours you worked according to Defendants' records, your estimated Individual Settlement Amount is approximately _____. Please note that this is just an estimate and is subject to change.

By signing and returning this form and the enclosed IRS Form W-4 and IRS Form W-9, you are claiming your Individual Settlement Amount and opting-in to the above-captioned lawsuit brought to recover monies under the Fair Labor Standards Act and New York Labor Law.

By signing and returning this form, the IRS Form W-4, and the IRS Form W-9, you acknowledge that you are releasing claims against Defendants and Releasees, as set forth in greater detail in the Notice of Settlement.

Date: _____          _____
                                                        (Sign your name here)

| **CORRECTIONS OR ADDITIONAL INFORMATION** |
|---|
| Write any name and address corrections below if any is necessary **OR** if there is no preprinted data to the left, please provide your name and address here:<br><br>_____<br>_____<br>_____<br>_____ |

| Daytime Telephone Number: | Evening Telephone Number: |
|---|---|

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

## SUBSTITUTE FORM W-9 REQUEST FOR TAXPAYER
## IDENTIFICATION NUMBER AND CERTIFICATION

In order to satisfy your tax reporting obligations related to any payment you may receive for the *Subhan, et al v. Auerbacher et al*. settlement to the IRS, please complete and return this Substitute IRS Form W-9 to the Third Party Administrator at the address listed above no later than _____, \_\_\_\_.

Thank you,
[Third Party Administrator]

| **TAXPAYER IDENTIFICATION NUMBER** |
|---|

Name (as shown on your income tax return): _____

Exempt payee code (if any)_____ Exemption from FATCA reporting code (if any)_____

Enter your social security number: \_\_\_\_ \_\_\_\_ \_\_\_\_ - \_\_\_\_ \_\_\_\_ - \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_

| **CERTIFICATION** |
|---|

**Under penalties of perjury, I certify that:**

**1.** The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

**2.** I am not subject to backup withholdings because: (a) I am exempt from backup withholdings, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholdings as a result of failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholdings, and

**3.** I am a U.S. person (including a U.S. resident alien), and

**4.** The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct

_____         _____
W-9 Signature                                            W-9 Signature Date

**Note**: If you have been notified by the IRS that you are subject to backup withholdings, you must cross out item two above. The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholdings.

DocuSign Envelope ID: AB3343C9-698C-4809-8F0E-D230C7AC253D

## SUBSTITUTE FORM W-4 REQUEST FOR TAXPAYER
## IDENTIFICATION NUMBER AND CERTIFICATION

In order to satisfy your tax reporting obligations to the IRS related to any payment you may receive under the *Subhan, et al v. Auerbacher., et al,* Case No. 20-cv-5541 settlement , please complete and return this Substitute IRS Form W-4 to the Third Party Administrator at the address listed above no later than _____, ____.

Thank you,
[Third Party Administrator]

| **TAXPAYER IDENTIFICATION NUMBER** |
|---|

Name (as shown on your income tax return): _____

Exempt payee code (if any)_____ Exemption from FATCA reporting code (if any)_____

Enter your social security number: _____ _____ _____ - _____ _____ - _____ _____ _____ _____

| **CERTIFICATION** |
|---|

**Under penalties of perjury, I certify that:**

    The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

    I am not subject to backup withholdings because: (a) I am exempt from backup withholdings, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholdings as a result of the failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholdings, and

    The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct

_____        _____

W-4 Signature                                                    W-4 Signature Date

**Note**: If you have been notified by the IRS that you are subject to backup withholdings, you must cross out item two above. The IRS does not require your consent to any provision of this document other than this Form W-4 certification to avoid backup withholdings.